# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| 655 Third Avenue | 1010 Northern Boulevard |
| --- | --- |
| Suite 1821 | Suite 328 |
| New York, NY 10017 | Great Neck, NY 11021 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

November 28, 2018

<u>Via ECF</u>
The Honorable Alison J. Nathan
United States District Judge for the
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *Esperanza v. Dyckman Bar, Corp., et al.*
    <u>Docket No.: 17-CV-08766-AJN</u>

Dear Judge Nathan:

  This firm represents the Plaintiff, Kiara Esperanza, in the above-referenced single-plaintiff wage and hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA") against Dyckman Bar, Corp. ("Dyckman"), Mary K. Mac, Inc. ("MKM"), and Jose Galeas, individually, (collectively as "Defendants," and together with Plaintiff as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of the Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit A.**[1]

---

[1] Plaintiff also brings claims for Defendants' alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

1

I.      **PRELIMINARY STATEMENT**

On November 10, 2017, Plaintiff filed a Complaint in this court against Defendants Dyckman and Galeas - - a Manhattan bar and restaurant and its owner who was Plaintiff's direct supervisor - - alleging that, *inter alia*, they failed to pay her overtime compensation pursuant to, *inter alia*, the FLSA. *See* Dkt. No. 1.  On February 6, 2018, Plaintiff filed an Amended Complaint adding, *inter alia*, an FLSA claim for retaliation, *see* Dkt. No. 13, and filed a Second Amended Complaint ("SAC") on March 15, 2018 adding MKM as a Defendant under a theory of single enterprise liability with the other Defendants. *See* Dkt. No. 19.  Specifically, through the SAC, Plaintiff alleged that she worked for Defendants as a bartender and waitress at their two Manhattan restaurants and bars from March 2015 until November 10, 2017.  Plaintiff further alleged that she routinely worked over forty hours each week, but Defendants failed to compensate her at the statutorily-applicable overtime rate for the hours that she worked each week exceeding forty.  Lastly, Plaintiff alleged that as a result of complaining about the method by which Defendants paid her, Defendants subsequently reduced her work hours and ultimately fired her.

Defendants filed an Answer to the SAC on April 2, 2018, denying all of Plaintiff's material allegations. *See* Dkt. No. 21.  On April 9, 2018, the Parties submitted a stipulation for conditional certification of a collective action of bartenders and waitresses, which the Court so-Ordered on April 10, 2018. *See* Dkt. No. 26.  Plaintiff then sent FLSA notices to twenty putative members, but after a sixty-day opt-in period, no additional members opted-in to the action.  Near the close of the opt-in period, on June 15, 2018, the Parties requested referral to the Southern District's Mediation Program, and the Court granted that request and entered a referral order on June 19, 2018. *See* Dkt. No. 28.

On July 26, 2018, the Parties participated in their first mediation session with a member of the Southern District's panel, M. Salman Ravala, Esq.  Prior to mediation, the Parties exchanged documents, including complete pay records.  While the mediation did not resolve Plaintiff's claims, the Parties made substantial progress towards resolution.  Following this mediation, the Parties completed paper discovery and subsequently participated in a second mediation with Mr. Ravala on September 10, 2018.  At this second mediation session, the Parties had a more complete look at Defendants' records, including Defendants' disputed time records.  Ultimately, with the assistance of the mediator, the Parties reached an agreement to settle the matter in principle for $45,000.00, resolving all claims that Plaintiff brought in this action.  The Parties subsequently worked to finalize the settlement agreement submitted with this motion as **Exhibit A**.

Additionally, as detailed below, Plaintiff's counsel respectfully submits an application for $14,819.91, or one-third of the net settlement amount, in attorneys' fees, plus $540.28 as reimbursement for counsel's litigation expenses.  According to the terms

2

of the agreement, Defendants will distribute payment in eight monthly payments, with the first payment to be in the amount of $11,250.00, which shall distributed by no later than thirty days from the date on which the Court approves this settlement and dismisses this action. The entire amount of $45,000.00 shall be paid within eight months of the date that the Court approves the settlement, with the second payment in the amount of $2,500.00 to be distributed no later than ninety days from the date of Court approval, and each subsequent payment of $5,208.33 to be made within thirty days thereafter for five consecutive months. Additionally, the agreement states that if Defendants default as to any payment, 200% of the unpaid balance shall become due and owing, and the Plaintiff may apply to the Court to enter judgment for this amount, plus attorneys' fees for the application.[2] As described below, the Parties submit that the settlement agreement represents a fair and reasonable resolution of Plaintiff's FLSA claims asserted in the matter. Thus, the Parties respectfully request that the Court approve the settlement agreement and dismiss this action.

## II.     THE AGREEMENT IS FAIR AND REASONABLE

FLSA claims may be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. "The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *accord In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); *Westerfield v. Washington Mut. Bank*, 2009 WL 6490084, at *1 (E.D.N.Y. June 26, 2009) (same).

---

[2] Plaintiff must notify Defendants' counsel by email upon any default, which will trigger a five-day cure period for Defendants to remit the missed payment amount.

3

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *1 (S.D.N.Y. Feb. 3, 2016) (Sullivan, *J.*) (applying *Wolinsky* factors). The *Wolinsky* factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*. (citing *Wolinsky*, 900 F. Supp. 2d at 335).

    A.    *Range of Possible Recovery*

In this case, Plaintiff claims that she worked for Defendants - - two corporations that operate as a single enterprise to run at least two Manhattan bars and restaurants, as well as their owner who was Plaintiff's direct supervisor - - as a bartender and waitress from March 2015 through November 10, 2017. Specifically, from the beginning of her employment through January 31, 2017, Plaintiff alleges that she worked five days per week, on Friday through Sunday from 4:30 p.m. until 5:00 a.m. and on Wednesday and Thursday from 5:00 p.m. until 1:00 a.m. Plaintiff further alleges that on each day that she worked, Defendants rarely provided her with an uninterrupted break during her shift, and thus by approximation, Plaintiff alleged that Defendants required her to work, and she did work, approximately fifty-three and one-half hours per week.

Plaintiff further alleges that for a brief period of approximately one month, from February 2017 and extending into March 2017, Defendants required Plaintiff to work, and she did work, at a neighboring bar also owned by Defendants in addition to her regularly scheduled hours. Accordingly, during this one month time period, Plaintiff claims that she worked seven days per week for a total of approximately sixty-six hours.

From the beginning of Plaintiff's employment up until the date of her termination, Plaintiff alleges that Defendants paid Plaintiff an hourly rate of $7.50 for all hours worked up to forty, but failed to pay her at any rate, let alone at the applicable overtime rate of $11.25, for all hours that she worked beyond forty each week. Plaintiff's claims that Defendants did not accurately record the overtime hours that Plaintiff worked, and thus failed to pay her for the hours that she worked over forty in a workweek. Refuting these allegations, Defendants argued two things in particular: (1) that Plaintiff actually began her employment with Defendants over one year later than she alleged, in April 2016; and (2) that Defendants' records show that Plaintiff rarely worked more than forty hours in a workweek.

4

After the production of records following the first mediation session, Plaintiff pointed to Defendants' records showing that on occasion, Defendants would "clock" Plaintiff out at a certain time, despite register receipts showing that she continued to work after her supposed "clock out" times. Indeed, Defendants' records showed that Plaintiff commenced work and ended work at the times that she alleged in her Complaint. Defendants countered with the argument that their records showed that Plaintiff did in fact commence her employment in April 2016, and that while the time records do show that she worked the hours that she alleged, the records also show that she worked fewer days than she alleged for most workweeks. Based on Defendants' records, with the assistance of the mediator, the Parties compromised on forty-five hours worked per week for the employment period of April 1, 2016 through July 11, 2017. Accordingly, based on the applicable overtime rate of $11.25, Plaintiff's FLSA overtime recovery is presented as follows:

| Weeks Worked Within FLSA Statute of Limitations | Hours Based Upon Defendants' Records | Maximum Actual Plus Liquidated Recovery Time and One-Half | Settlement Amount Received After Fees/Costs | Recovery Percentage Time and One-Half |
|---|---|---|---|---|
| 68 | 45 | $7,395.50 | $29,639.81 | 401% |

With respect to Plaintiff's FLSA retaliation claim, Defendants vehemently contend that Defendants terminated Plaintiff's employment due to permissible reasons, and that Defendants were not motivated to do so by Plaintiff's complaint of allegedly unlawful pay practices. Indeed, Defendants provided permissible, legitimate reasons supported by factual evidence for their reason for Plaintiff's termination, namely employee misconduct. Plaintiff disputed Defendants' evidence, and further argued that if it had not been for Plaintiff's complaint of wage violations, the proffered offenses that she committed would not have been terminable.

Rather than face protracted litigation on the issue, the Parties compromised and reached a settlement of all claims. Defendants made clear that the reason for settlement is to avoid litigation, not because there was any liability as a result of Plaintiff's termination.

Clearly, due to the calculation of Plaintiff's damages, in considering her best day based upon her provable damages and actual recovery under the Parties' settlement, this agreement is undoubtedly both fair and reasonable. Indeed, there is a realistic possibility that Plaintiff would actually receive less if this case had not settled for the amount that it

did and proceeded to trial given the fact that Plaintiff might not have worked as many days as she originally thought that she did. This is also so because "FLSA claims have a two-year statute of limitations, unless the violation was willful, which extends the limitations period to three years." *Garcia v. Bad Horse Pizza, Inc.*, 2017 WL 192955, at *2 (S.D.N.Y. Jan. 18, 2017) (citing 29 U.S.C. § 255(a)). Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *Id*. at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them). Thus, if Plaintiff was unable to establish willfulness, or if the Defendants produced evidence of good faith, Plaintiff's FLSA recovery could be significantly less than what she is receiving as a result of this settlement. Thus, the result ultimately achieved for Plaintiff not only represents a fair and reasonable recovery in light of her best provable result, it is also potentially better than Plaintiff would receive even on her best day at trial. This factor overwhelmingly favors approval.

### B.  *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows the Parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the Parties would have then been obligated to complete formal document discovery, depositions of all parties, and subsequent motion practice. The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiff's claims at potentially great expense. At this point in the action, there have not been substantial out-of-pocket litigation expenses incurred, but post-depositions, the costs would naturally balloon. This settlement eliminates all of those costs and delays and this clearly weighs in favor of approval.

### C.  *Litigation Risks*

Third, of course, the Parties face the risk of losing at trial, either in whole or in part. Here, even if Plaintiff were to succeed on liability, there are four risks that could serve to either minimize or eliminate her recovery: (1) failure to prove that Plaintiff commenced her employment a year earlier than Defendants' records show; (2) failure to prove that Plaintiff worked the amount of hours/days that she alleged; (3) failure to prove willful violations of the FLSA; and (4) Defendants reasonably could show that they made a good faith effort to comply with the statute. Considering these attendant risks, the settlement amount here heavily weighs in favor of a fair and reasonable result that warrants this Court's approval.

### D. *Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions*

As detailed herein, this settlement was reached before expending otherwise-inevitable resources on completing further document production, depositions, and before any motion practice. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were aggressively pursued on both sides to come to a fair and reasonable compromise, with much-needed assistance from a Court-directed mediation that occurred on two separate days. Indeed, the fact that the Parties' settlement was reached with the guidance of a member of this District's mediation panel strongly indicates a fair and reasonable settlement. *See Siddiky v. Union Square Hospitality Grp. LLC*, 2017 WL 2198158, at *4 (S.D.N.Y. May 17, 2017) (citing *Romero v. La Revise Assocs. L.L.C.*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014)) (applying presumption of procedural fairness where negotiations took place with experienced mediator). Accordingly, the settlement achieved clearly reflects an arm's-length negotiation absent from fraud or collusion and a reasonable compromise over the contested issues at stake in the matter.

Moreover, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, Plaintiff's release in paragraph 1 of the Settlement Agreement is limited solely to any wage and hour claims that Plaintiff has or may have against Defendants, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). To the contrary, this release is narrowly tailored to release only claims relevant to the instant action. Likewise, the agreement does not contain a confidentiality clause that unduly restricts Plaintiff's ability to discuss the settlement, or an overly broad non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez,* 2015 WL 1455689, at *5); *Cionca v. Interactive Realty*, *LLC*, 2016 WL 3440554, at *3 (S.D.N.Y. Jun. 10, 2016) ("While not every non-disparagement clause in an FLSA settlement is *per se* objectionable, a clause which bars a plaintiff from making negative statements about a defendant must include a carve-out for truthful statements about a plaintiff's experience in litigating his case."). Here, the clause found in paragraph 7(A) of the Parties' settlement agreement contains that carve out.

Considering the risks and potential costs and resources that would be expended in further litigation in this case, including as outlined above, Plaintiff maintains that this settlement is an excellent result for her, and it should be approved as a fair and reasonable settlement. Moreover, the Parties' proposed order, submitted with the present motion as

**Exhibit B**, requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary. Should the Court decline to endorse that Order and issue its own from scratch, the Parties respectfully request that any such Order include that provision.

### III.     Attorneys' Fees and Costs are also Reasonable

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, Plaintiff's counsel requests that the Court approve fees of one-third of the net settlement, plus expenses, which is "consistent with the norms . . . in this circuit." *Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards at a rate of one-third of the net settlement. *See Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit."); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Plaintiff's counsel's requested fee of $14,819.91, or one-third of the net settlement here, is entirely reasonable.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *Sakiko Fujiwara v. Sushi Yasuda Ltd.*,

8

58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Goldberger*, 209 F.3d. at 50.  Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.  Additionally, the firm "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas v. National Merchant Servs., Inc.*,, 2015 WL 5821631, at *9 (E.D.N.Y. Oct. 2, 2015); s*ee In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (quoting *Grinnell*, 495 F.2d at 470) ("The most salient is the attorneys' risk in accepting a case on contingency fee, for the Second Circuit has noted 'no one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'"); *Asare v. Change Group of New York* , 2013 WL 6144764, at *20 (S.D.N.Y. Nov. 18, 2013) (noting the importance of undertaking an FLSA action without assurance of payment for services where "lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind").

In order to calculate the lodestar cross check, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).  Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, the Firm's senior associate, Jeffrey R. Maguire, who possesses ten years of experience, would seek $295 per hour, and the Firm would seek reimbursement for its junior associates at a rate of $200 per hour, and its paralegals at the rate of $100 per hour. Courts within this Circuit have routinely approved these rates. *See Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Simono v. Gemco Realty II, LLC*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals); *Amador et al. v. CILS, LTD, et al.*, No. 16-cv-1733 (VB) (S.D.N.Y. Feb. 28, 2017) (approving as reasonable rates of $400 per hour for Mr. Borrelli, $350 for Mr. Coleman, between $200 and $275 for the firm's associates); *Aguilar v. Trolio Landscaping,*

9

*Inc.*, Docket No.: 16-cv-02230 (CS), D.E. 32 (S.D.N.Y. Feb. 16, 2017) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 per hour for one of the firm's junior attorneys, and $100.00 per hour for the Firm's paralegals).

The Firm calculated its lodestar in this case to be $28,565.00, not inclusive of time spent on this letter. Thus, the Firm's requested fee of $14,819.91 is much less than the lodestar and thus does not require a multiplier. Plaintiff's counsel's contemporaneous billing records are annexed hereto as **Exhibit C**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $540.28 in out-of-pocket expenses, comprised mainly of the filing fee, service, and postage. Plaintiff's counsel's expense statement is annexed hereto as **Exhibit D**.

IV.  **CONCLUSION**

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms. Again, there is a proposed order attached hereto as **Exhibit B** for the Court's convenience.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
*For the Firm*

C:  All Counsel of Record *via* ECF